Frederick Charles **BAIRD** and
Donnella Laura Baird

v.

**BELL HELICOPTER TEXTRON, A**
**Division of Textron, Inc.,**

v.

**LAC ST. JEAN AVIATION, LTD.,** Canadian Helicopters, Ltd., Okanagan
Helicopters, Ltd.

**Civ. A. No. CA–4–77–310–K.**

United States District Court,
N. D. Texas,
Fort Worth Division.

May 29, 1980.

James J. McCarthey, Magana, Cathcart & McCarthey, Los Angeles, Cal., Jim Lane, Lane & Paddock, Fort Worth, Tex., for plaintiff.

R. David Broiles, Stephen C. Howell, Fort Worth, Tex., for Bell.

Eugene Jericho and Kevin H. Good, Strasburger & Price, Dallas, Tex., for Lac St. Jean.

## MEMORANDUM OPINION

BELEW, District Judge.

Defendant Bell Helicopter Textron ("Bell") has presented this Court with its various Motions for Determination of Applicable Law, and for Determination of Foreign Law and Third-Party Defendants Lac St. Jean Aviation, Ltd. and Canadian Helicopters, Ltd. have presented their Motion to Dismiss for Lack of Jurisdiction and Okanagan Helicopters, Ltd. has argued Motion to Dismiss for Failure to State a Claim upon which Relief may be Granted. After carefully considering the briefs of counsel, and having heard oral argument, this Court is of the opinion that Lac St. Jean's and Canadian Helicopters' Motion to Dismiss for Lack of Jurisdiction and Okanagan Helicopters Ltd.'s Motion to Dismiss should be and are hereby DENIED.

This Court is further of the opinion that Bell's Motion for Determination of Applicable Law is disposed of as set out in Part 2 of this opinion, to wit:

1. This Court holds that the law of Texas is applicable to the liability aspects of Plaintiffs' products liability claim against Bell.

2. This Court holds that the law of Texas applies to Bell's claim for contribution from third-party defendants Lac St. Jean Aviation, Ltd., Canadian Helicopters, Ltd., and Okanagan Helicopters, Ltd.

3. This Court holds that the law of Texas will be applied to Plaintiffs' pecuniary losses; i. e. medical expenses, lost earnings and the like.

4. This Court holds that the laws of Canada will be applied to Plaintiff F. C. Baird's non-pecuniary damage claims; i. e. pain and suffering.

5. This Court directs the parties to submit additional authority on the question of the nature of British Columbian law with regard to Plaintiff D. L. Baird's cause of action for loss of consortium, and its applicability to this case.

Finally, this Court declines to rule upon Bell's Motion for Determination of Foreign Law at this time.

### The Facts

This lawsuit arises out of the crash of a helicopter in the jungles of Surinam on May 25, 1976. Plaintiff, a Canadian citizen, was piloting the aircraft at the time of the accident and he suffered severe injuries from the mishap. Baird's cause of action against Bell, the manufacturer of the helicopter, is grounded in strict liability. Bell answers Baird's claims with the assertion that the aircraft was not defectively designed or manufactured and that the accident was caused by the negligent repair and maintenance of the aircraft by one or more of the third-party defendants.

The aircraft involved has a lengthy chain of ownership. The helicopter ("C–FAOT") was sold by Bell to Highway Properties, Ltd., a Canadian corporation in March of 1972. On December 30, 1972, the C–FAOT was sold by Highway Properties, Ltd. to Defendant Lac St. Jean Aviation, Ltd. ("LSJ"), a Canadian Corporation. Two months later, all of LSJ's stock was purchased by Third-Party Defendant Okanagan Helicopters, Ltd. ("Okanagan"), another Canadian Company. LSJ became a wholly-owned subsidiary of Okanagan, but the C–FAOT was registered to LSJ and was still nominally owned by that company.

At the time of the accident, the helicopter was operating in Surinam under the ownership and control of one of two corporations. There is a factual dispute over whether Canadian Helicopters, Ltd., a Third-Party Defendant and wholly-owned subsidiary of Okanagan, or Surinam Helicopters, Ltd. N.V.i.o., a corporation set up in Surinam under a license from that government, owned or operated the C–FAOT at the time of the incident in question. There is also a dispute between Bell and the other parties to this suit over whether Surinam Helicopters, Ltd. was a wholly-owned subsidiary of Canadian Helicopters, Ltd., ("Canadian") or an independent corporation. Indeed, there is some evidence in the record that Surinam Helicopters, Ltd. was never incorporated. The status of the various corporate entities involved in this litigation is crucial to the determination of liability, if any, for Plaintiff's injuries. For the purpose of the motions presently before this Court, however, no such findings need be made and this Court expressly declines to do so.

The C–FAOT has had a rather checkered history. It was manufactured and sold in early 1972. The record reflects that it saw continuous service with one or two exceptions right up to the date of the final accident. One of those service interruptions occurred when the aircraft crashed in Canada in July of 1973. The record does not reveal the nature of the first mishap, but the damage to the aircraft was apparently extensive. The C–FAOT was almost completely rebuilt, although the mechanical repair work was not done by Bell. Bell's only connection with that crash was that it undertook cabin repairs at its plant in Amarillo, Texas. There is some evidence in the record that Bell did not warrant or certify the refurbished C–FAOT because the major mechanical repairs had been done by another company.

After the first accident, the aircraft operated in Canada for approximately 14 months without incident. In September of 1975, it was disassembled and flown to South America, where it was reassembled and operated in Guyana and Surinam until the Spring of 1976. On May 8, 1976, the C–FAOT was forced to make an emergency landing on a jungle road because of an engine failure. Repairs were undertaken and several components of the engine and driveshaft were replaced, including that portion of the power train which allegedly failed causing the crash in which Plaintiff sustained his injuries. After the latest repairs were made, the C–FAOT was flown for three days before the accident in question occurred on or about May 20, 1976.

Plaintiff and his wife are both Canadian citizens. Except for the brief and unfortunate sojourn to Surinam, they have lived in Canada all of their lives. Bell is an unincorporated division of Textron, Inc., a Delaware corporation. The aircraft in question was manufactured at Bell's main plaint in Fort Worth, Texas. The Third-Party Defendants are all Canadian corporations. Okanagan has consented to jurisdiction in Texas, but Canadian and LSJ have filed Motions to Dismiss for Lack of Jurisdiction, alleging that they have no contacts with the State of Texas and that, therefore, this court lacks *in personam* jurisdiction over them.

The record reflects that the three Canadian corporations have filed suit against Bell in Canada for losses sustained as a result of the crash of the C–FAOT. Those claimed damages are largely based on the loss of the aircraft itself. The instant case was originally filed in the Superior Court of Los Angeles, California. By agreed order, the case was dismissed and refiled in this Court, a fortuitous circumstance given the choice of law complexities inherent in a transfer under 28 U.S.C. § 1404(a). *See Van Dusen v. Barrack*, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964).

*Discussion*

As stated earlier, there are three motions presently under consideration. For the purposes of organization, they will be taken up in sequence.

1. *Motion to Dismiss for Lack of Jurisdiction.*

Third-Party Defendants Canadian and LSJ claim that this Court lacks jurisdiction over them. LSJ claims to have no contact whatsoever with the State of Texas and that, therefore; (1) this Court lacks *in personam* jurisdiction; and (2) proper service of process cannot be effected as to it under *Tex.Rev.Civ.Stat.Ann.* Art. 2031b.

Canadian acknowledges that it has, in the past, had contact with Texas, but it urges that the contact is constitutionally insufficient to support this Court's exercise of jurisdiction over it. It also claims that it could not be properly served with process. Bell answers these claims with affidavits and other documentary evidence submitted to refute the movants' claims that they have not had sufficient contacts with Texas to support jurisdiction.

In a situation such as this, where non-resident defendants test the power of a court to exercise *in personam* jurisdiction, a two-fold inquiry must be made. First, it must be determined whether the non-residents are amenable to process under the Texas long-arm statute. *See D.L.J. Properties v. Eastern Savings Bank*, 549 S.W.2d 754 (Tex.Civ.App.—Eastland 1977 no writ), *Gubitosi v. Buddy Schoellkopf Products, Inc.*, 545 S.W.2d 528 (Tex.Civ.App.—Tyler 1976, no writ), *Pizza Inn, Inc. v. Lumar*, 513 S.W.2d 251 (Tex.Civ.App.—Eastland 1974, writ ref'd n. r. e.). Second, assuming service may be had under the long-arm statute, the court must then determine whether the exercise of jurisdiction would run afoul of the constitutional requirements of due process. *Product Promotions, Inc. v. Cousteau*, 495 F.2d 483 (5th Cir. 1974); *Atwood Hatcheries v. Heisdorf & Nelson Farms*, 357 F.2d 847 (5th Cir. 1966). These two requirements will be examined separately below.

(a) *Texas' Long-Arm Statute*

Texas' long-arm statute, *Tex.Rev.Civ. Stat.Ann. Art. 2031b* provides in part:

Sec. 3 Any . . . non-resident . . . person that engages in business in this State . . . and does not maintain a place of regular business in this State or a designated agent . . . in this State [shall be deemed to have appointed] . . . the Secretary of State of Texas as agent upon whom service of process may be made in any action, suit or proceedings arising out of such business done in this State, wherein such . . . non-resident natural person is a party or is to be made a party.

Sec. 4 For the purpose of this Act, and without including other acts that may

constitute doing business, any . . . non-resident . . . person shall be deemed doing business in this State by entering into contract by mail or otherwise with a resident of Texas to be performed in whole or in part by either party in this State.

*Tex.Civ.Stat.Ann.* Art. 2031b, §§ 3, 4.

Courts have not found it difficult to satisfy the "doing business" requirement of Article 2031b. The Texas Supreme Court has stated that a liberal reading of the long-arm statute is the most reasonable approach to Article 2031b because it allows the courts to "focus on the constitutional limitations of due process rather than to engage in technical and abstruse attempts to consistently define 'doing business.'" *U-Anchor Advertising, Inc. v. Burt,* 553 S.W.2d 760, 762 (Tex.1977).

A foreign defendant was found to have been doing business in Texas for the purposes of Article 2031b in *Pizza Inn, Inc. v. Lumar, supra.* In that case, defendant, a Virginia resident, entered into a franchise agreement with plaintiff. The suit was filed after defendant failed to pay royalty fees which were due plaintiff. The payments were to be made through the mail to Pizza Hut at its offices in Texas. The court found that these facts constituted doing business in the state and that service could be had on the defendant. The fact that a guaranty agreement was expressly payable in Texas was the crucial fact in *Gubitosi v. Buddy Schoellkopf Products, Inc., supra,* another case upholding service accomplished under Article 2031b.

In *Navarro v. Sedco, Inc.,* 449 F.Supp. 1355 (D.C.S.D.Tex.1978), the court found that a defendant had done business in Texas by purchasing goods and services and leasing equipment from a Texas company. This was held sufficient to support proper service even though the cause of action was only tangentially related to that activity. Indeed, in *Wilkerson v. Fortuna Corp.,* 554 F.2d 745 (5th Cir. 1977), the court found that the defendant racetrack was doing business in Texas through phone listings in the white and yellow pages of the El Paso phone book; newspaper, radio and billboard advertising; and solicitation of racetrack entries from Texas by letter and telephone. Again, no contacts were alleged between defendant and the State of Texas directly concerning the facts surrounding the specific cause of action before the Court in *Wilkerson, supra.*

The case of *Eyerly Aircraft Co. v. Killian,* 414 F.2d 591 (5th Cir. 1969) illustrates the ease with which a company may be deemed to be doing business in Texas for the purposes of Article 2031b. In that case, Eyerly Aircraft Co., an Oregon domiciliary and manufacturer of carnival rides, sold one of its products to an Illinois corporation who, in turn, sold it to a company in South Dakota. The machine was transported throughout the United States as part of a traveling carnival and was in Texas when it malfunctioned, injuring a Texas resident. Upholding a Texas Federal District Court's exercise of jurisdiction over Eyerly Aircraft, the Fifth Circuit noted that the corporation had conducted substantial business relations directly with Texas companies. Even though none of those transactions involved the particular machine that caused Killian's injuries, they were held to be sufficient to satisfy the Article 2031b "doing business" requirement. 414 F.2d at 597.

■ In light of the above authority, this Court finds that both of the Third-Party Defendants have adequate contacts with Texas to allow proper service of process on them under Art. 2031b. The record reflects that Canadian entered into a sales contract with Bell on one occasion prior to the accident. Further, it is evident that Canadian also entered into an agreement with Bell whereby Canadian (and perhaps LSJ) was to become an authorized Bell customer service facility. As part of the arrangement, Bell extended a $20,000 line of credit and authorized Canadian to receive a discount on spare parts. Finally, the agreement between the parties contained a choice of law provision applying Texas law to any disputes arising thereunder. It is clear that the business relationship between Bell and Canadian involved contracts performable in

whole or in part in Texas. *See Walker v. Newgent*, 583 F.2d 163 (5th Cir. 1978).

■ This Court also finds that LSJ was doing business in Texas for the purposes of Article 2031b. The record reflects that LSJ entered into a contract with Bell covering fuselage repairs caused by the first crash of the C–FAOT in Canada. The repairs were carried out in Texas. Therefore, the contract was partially performable in Texas and LSJ can be said to have been doing business in Texas by definition. *Tex.Rev. Civ.Stat.Ann.* Art. 2031b, § 4. This finding is further supported by evidence in the record indicating that LSJ entered into a service contract with Bell whereby Bell would train LSJ mechanics, (one of whom apparently worked on the C–FAOT after its first crash). On the basis of the evidence and authority discussed above, therefore, this Court finds that both Canadian and LSJ were doing business in Texas for the purposes of Article 2031b and, accordingly, that service of process carried out pursuant to that statute was proper. Having so found, this Court must now address the more important and more difficult question of the constitutionality of the exercise of its jurisdiction over the Third-Party Defendants. *Product Promotions Inc. v. Cousteau, supra, U-Anchor Advertising, Inc. v. Burt, supra.*

### (b) *Due Process Considerations*

A federal court faced with claims such as those presently before this Court must make certain that the exercise of its jurisdiction over a particular foreign defendant comports with the requirements of due process. *See Atwood Hatcheries v. Heisdorf & Nelson Farms, supra.* The Fifth Circuit has developed a two-step test for determining whether a foreign party may be required to appear before a particular court. First, there must be some minimum contact with the forum state which results from the foreign party's affirmative act. Second, it must be fair and reasonable to require the foreign party to come to the forum state to defend itself. *Product Promotions Inc. v. Cousteau, supra, Jetco Electronics Inc. v. Gardiner*, 473 F.2d 1228 (5th

Cir. 1973), *Atwood Hatcheries v. Heisdorf & Nelson Farms, supra.* See *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

### (1) Minimum Contact

The Fifth Circuit has not found it difficult to hold in particular cases that foreign corporations have had "minimum contacts" with forum states. The general attitude regarding this requirement is not surprising, given the Supreme Court's treatment of it in *McGee v. International Life Insurance Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). In that case, the Court held that a single mailing to one California resident from a Texas corporation with absolutely no other business with California was sufficient contact for the purposes of due process to allow a California court to take *in personam* jurisdiction over the Texas corporation.

The Fifth Circuit has taken a similarly liberal stance regarding the minimum contacts rule. In *Coulter v. Sears, Roebuck & Co.*, 426 F.2d 1315 (5th Cir. 1970), the court held that a District Court in Texas could exercise jurisdiction over an Illinois corporation on a "stream of commerce" theory. The foreign defendant manufactured television sets for Sears, Roebuck & Co., many of which were sold by Sears in Texas. The court found that the television manufacturer's knowledge that some of its products were to be distributed and sold in Texas satisfied the minimum contacts requirement. The same theory was part of the reasoning behind the court's approval of jurisdiction in *Eyerly Aircraft Co. v. Killian, supra.*

Canadian and LSJ assert that this Court lacks *in personam* jurisdiction over them. LSJ contends that it had no contacts with Texas at all and that therefore, Bell must fail in its effort to prove that LSJ had constitutionally sufficient contact with the forum. Canadian asserts that the only contact it has had with Texas was the purchase of one helicopter from Bell, which aircraft is totally unrelated to the present lawsuit. The record reflects that LSJ has, indeed had contact with Texas in the form of a

training arrangement between itself and Bell.

Although LSJ's agreement with Bell might prove to have some relevance to this lawsuit, (one of LSJ's Bell-trained mechanics apparently worked on the C–FAOT prior to its destruction) in which case this Court could certainly exercise its jurisdiction over that Third-Party Defendant, this Court need not and will not so find for the pur-. poses of this part of the inquiry. Instead, the Court will assume the better case from LSJ's standpoint, specifically that LSJ's position is identical to Canadian's; it had some contact with Texas, but the contact was wholly unrelated to the instant case.

The Fifth Circuit has held that the minimum contacts requirement may be satisfied by any contact with a forum state, regardless of whether it was related to the cause of action. *Wilkerson v. Fortuna Corp., supra, Jetco Electronics Industries, Inc. v. Gardiner, supra* Interpreting *National Geographic Society v. California Board of Equalization*, 430 U.S. 551, 97 S.Ct. 1386, 51 L.Ed.2d 631 (1977), a case upholding a state's power to impose a use tax that is unrelated to the in-state activities of a foreign entity, the court in *Wilkerson v. Fortuna Corp.* stated that:

> [i]f a "minimum connection" is all that need to be shown to exert the state's power to tax, *a fortiori*, a non-resident may be required to defend an action in state court even though the suit bears no relation to the activities deemed necessary and sufficient to constitute minimum contacts.

*Wilkerson v. Fortuna Corp., supra,* 554 F.2d 745, 750.

■ On the basis of the foregoing discussion, this Court finds that both Canadian and LSJ have sufficient contacts with Texas to satisfy the requirements of due process. "The relevant concern should be . . whether the defendant's contact with [the] forum rests on something more substantial than the mere fortuity that the plaintiff happens to be a. resident of the forum." *Product Promotions, Inc. v. Cousteau, supra,* 495 F.2d 483, 497 n. 26. This Court

need not rely on fortuity to support the exercise of its jurisdiction. Both Third-Party Defendants have acted purposefully in Texas, either through purchases of equipment, long term training agreements, repair contracts or service representative arrangements. Although Canadian and LSJ may not have explicitly submitted themselves to the laws of Texas, or knowingly sought the protection of those laws, such knowledge or intent is not necessary. "The operative consideration is that the [non-resident's] contacts with the forum were deliberate, rather than fortuitous, so that the possible need to invoke the benefits and protections of the forum's laws was reasonably foreseeable, if not foreseen, rather than a surprise." *Product Promotions, Inc. v. Cousteau, supra,* 495 F.2d 483, 496. The actions of the two corporations raised the possibility that the laws of Texas would eventually become involved in their relationships with Bell. It is evident then, and this Court holds, that Canadian and LSJ pass constitutional muster for the "minimum contacts" requirement.

### (2) Fairness Considerations

■ Even though a non-resident defendant has some connection with the forum state, jurisdiction still cannot be exercised over the foreign party if to do so would "offend 'traditional notions of fair play and substantial justice'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (1945). The factors involved have been described by the Fifth Circuit to include the "interest of the state in providing a forum for the suit, the relative conveniences and inconveniences of the parties, and basic equities." *Product Promotions, Inc. v. Cousteau, supra,* 495 F.2d 483, 498. Applying these considerations to the facts of this case, this Court is of the opinion that, although it will be inconvenient for the two Third-Party Defendants to come to Texas to participate in the instant case, that hardship in no way rises to the level of a denial of due process.

The State of Texas has several legitimate interests in having Canadian and LSJ in-

volved in this lawsuit. First, there is a possibility that the two Third-Party Defendants will be required to bear some of the liability, if any, resulting from the accident in question. The state is certainly interested in seeing that one of its citizens is not forced to incur any greater damage liability than is legally required. Second, the fact of Bell's residence brings into account Texas' general desire to apply its laws to the rights and liabilities of its citizens. Third, Texas law will definitely be of some relevance to this lawsuit. Fourth, to the extent that Bell has claims against Canadian and LSJ, Texas is interested in providing a forum for its domiciliaries.

An analysis of the relative convenience of the parties is inconclusive. It would definitely be more convenient for each party to have the suit tried at its own place of residence. It is apparent, however, that there is nothing extraordinary about the burden on Canadian and LSJ of being required to take part in the instant action. This conclusion is reached in spite of the fact that a lawsuit between the two Third-Party Defendants and Bell is currently pending in Canada, and it would undoubtedly be simpler to litigate all of the claims of the parties in one action. Because Plaintiff in the instant case is not a party to the Canadian lawsuit, however, any judgment entered by the foreign court would necessarily be incomplete. The court in *Product Promotions, Inc. v. Cousteau* was faced with the same argument and found it similarly unpersuasive. 495 F.2d at 498, n. 29.

Canadian and LSJ have failed to show that inequity would result from being forced to participate in this cause of action. The questions presented by this case are different from the claims brought by the two Third-Party Defendants in their Canadian suit, and that dissimilarity will likely prevent the inequity of forcing defendants to choose between fully litigating all of the issues in this lawsuit as between them, or risk the effects of *res judicata* in the Canadian action. Indeed, to the extent that Canadian and LSJ might be liable for a portion of Plaintiff's damages, if any are found, it would seem to be to the Third-Par-

ty Defendants' advantage to actively participate in this lawsuit rather than be faced with the fact of a judgment in Canada. It would certainly be more equitable from Bell's standpoint to have all of the potential defendants present in the same case. The balance of the equities in this case, therefore, favors the exercise of jurisdiction over Canadian and LSJ. On the basis of the foregoing discussion and the authorities cited therein, this Court is of the opinion that the motion of Canadian and LSJ to dismiss for lack of jurisdiction should be and the same is hereby DENIED.

### 2. *Motion to Determine Applicable Law.*

This case presents a complex choice of law problem. This Court must decide which governmental entity's law will be applied to the instant facts.

At least three jurisdictions are involved in this cause; Canada, Texas and Surinam. Canada is the home of the Plaintiffs in this case. Further, all three of the Third-Party Defendant corporations are Canadian domiciliaries. The C–FAOT was owned by one of the three Canadian companies and it bore Canadian registration at the time of the crash.

Texas is the domicile of Defendant Bell. The aircraft in question was manufactured in Texas and was serviced by mechanics trained in Texas. The replacement parts for the helicopter were also Texas products and Texas is the forum for the lawsuit. Surinam was the purported domicile of a company that allegedly owned and operated the aircraft during the period leading up to the time the crash occurred. The status of that entity, Surinam Helicopters Ltd. ("SHL") is disputed. There is some question as to whether SHL was a duly incorporated business, and, if so, what its nationality was. Finally, the crash in question took place in Surinam.

Most of the contacts described above have been held at one time or another to be sufficient grounds for the application of a particular state's laws to a fact situation. *See e. g. DeHam v. Mexican National Rail-*

1138

*way Co.*, 86 Tex. 68, 23 S.W. 381 (1893) (rights of plaintiff turns on place where injury occurred); *Polglase v. Greyhound Lines, Inc.*, 401 F.Supp. 335 (D.C.Md.1975) (pleading and procedural rules of the forum applied); *Continental Oil Co. v. General American Transportation Corporation*, 409 F.Supp. 288 (D.C.S.D.Tex.1976) (law of the state of manufacturer of defective product). This Court is not, however, free to choose from among the various methods utilized to determine the rule of decision in a particular case.

█ This case has been brought in the United States District Court on the basis of diversity of citizenship. This Court is therefore required to look to state law as a basis for decision. *Erie Railroad Co. v. Tompkins* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). A federal court sitting in diversity must utilize the forum state's choice of law rules as well as its substantive law. *Klaxon v. Stentor Electric Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). This Court must therefore look to Texas to determine the analysis to be applied to these facts.

█ The Texas Supreme Court has recently made a major change in this state's choice of law analysis. Rejecting the long standing rule of *lex loci delicti*, the court adopted the more flexible approach to conflict questions found in the Section 6 and 145 of the Restatement (Second) of Conflicts. *Gutierrez v. Collins*, 583 S.W.2d 312 (Tex.1979). In order to utilize the "most significant relationship" test as set out in the Restatement, a court faced with a problem involving more than one jurisdiction must undertake a factual and legal analysis involving numerous factors.

Section 6 of the Restatement (Second) of conflicts contains the general principle involved in this type of analysis. It provides:

§ 6 Choice-of-Law Principles

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include,

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

*Restatement (Second) Conflict of Laws § 6*

Section 145 of the Restatement outlines the factual matters to be considered while applying the Section 6 principles to a given case. Section 145 provides:

§ 145 The General Principle

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered. These contacts are to be evaluated according to their relative importance with respect to the particular issue.

*Restatement (Second) Conflict of Laws § 145.*

The task facing this Court is not a simple one, especially given the novelty of the Restatement formulation to the Texas courts

and the concomitant lack of Texas authority discussing the various principles listed therein. This Court need not proceed totally without aid, however, because numerous jurisdictions have previously adopted the Restatement formulation and have decided cases using the type of analysis required. *See e. g. Johnson v. Spider Staging Corp.*, 87 Wash.2d 577, 555 P.2d 997 (1976); *Brickner v. Gooden*, 525 P.2d 632 (Okl.1974); *Beaulieu v. Beaulieu*, 265 A.2d 610 (Me. 1970).

Before engaging in the *Gutierrez* analysis, this Court must determine the exact nature of the conflict or indeed, if a conflict even exists. *See* Sedler in *Symposium, Conflict of Laws Roundtable*, 49 Tex.L.Rev. 211–245, at 225 (1971). If no conflict exists, then the question of whose law should apply becomes moot.

One of the jurisdictions, Surinam, may be disposed of fairly quickly. No party to this action contends that the law of Surinam should be applied to the facts of this case. Before *Gutierrez*, the *lex loci* rule would have made Surinam law determinative of the rights of the parties. The Restatement, however, makes the location of the accident merely another factor to be considered. Under the instant facts, that factor becomes almost insignificant.

> Situations do arise . . . where the place of the injury will not play an important roll in the selection of the state of the applicable law. This will be so, for example, when the place of injury can be said to be fortuitous or when for other reasons it bears little relation to the occurrence and the parties with respect to the particular issue.

*Rest.2d* of *Conflict of Laws*, § 145 comment e.

In this case, the location of the accident is a fortuity with regard to Plaintiff's personal injury claim. The parties are all either Texas or Canadian citizens, the aircraft in question was manufactured in Texas, and plaintiff's employers are subscribers to the Canadian worker's compensation system.

The only contact Surinam has with any of the parties to the lawsuit that is not purely accidental is the existence of Surinam Helicopters Ltd. There is some dispute as to whether that entity, a subsidiary of Canadian, was duly incorporated in Surinam. If it was incorporated, the question arises whether Surinam would have any interest in applying its products liability, and worker's compensation and contributory or comparative negligence principles to the case at hand. In short, would the policies behind the applicable Surinam law be relevant to a lawsuit involving a Canadian plaintiff and American and Canadian defendants, and an American product? This Court thinks not. Of the four factors enumerated in Section 145 of the Restatement only one is directly relevant to Surinam's relationship to the lawsuit. The injury did occur there and the helicopter was overhauled in Guyana prior to the crash, which repair job allegedly included the installation of the part that failed, resulting in the crash. The overhauling was carried out by a Canadian national, however, and, at the time the repairs were made, the mechanic's employer, Surinam Helicopters, had apparently not been duly incorporated in Surinam. The parties, however, are all Canadian or American, and the center of the relationship between them is either in Canada or Texas. This Court therefore finds that Surinam has no significant relation to this litigation except with regard to the exact legal status of Surinam Helicopters N.V.i.o. While Surinam law must be consulted to determine whether Surinam Helicopters was a corporation or an unincorporated association, if that determination is relevant at all to Plaintiff's claims, it certainly has no bearing on the liability issues involved in this case. *See e. g. First National Bank in Ft. Collins v. Rostek*, 182 Colo. 437, 514 P.2d 314 (1973).

The major controversy arises between Canadian law and the laws of Texas. Both jurisdictions have important contacts with this lawsuit and the choice of law decision as between the two will likely have a substantial impact on the case.

Plaintiffs bring this action against Bell alleging negligence in the design, manufacture, assembly, inspection, testing, repair

and service of the C–FAOT. They further allege that Bell placed into commerce a product (the C–FAOT) which was unreasonably dangerous for its intended use. Plaintiffs also claim that Bell was aware of the defects and that Bell failed to warn users of the product and indeed, knowingly concealed the defects.

Defendant Bell has filed third party claims against Okanagan, Canadian and LSJ. It alleges that any injuries suffered by Plaintiff were the result of the negligence of the third-party defendants in failing to properly align the aircraft after overhauling it in Guyana and in failing to provide proper maintenance for the helicopter. Bell asks for judgment over and against the Canadian corporations jointly and severally for all sums assessed against Bell.

There are two theories of recovery in this case; products liability as between Baird and Bell, and negligence as between Bell and the third-party defendants. For the purposes of organization, the analysis will deal with each theory separately.

(a) *The Products Liability Claim*

■ Two jurisdictions are involved in the lawsuit between Baird and Bell; Canada and Texas. Bell argues that Canadian law should apply to the liability issues asserted by Baird because Canada has "overwhelming" contacts with this case through the citizenship of the injured plaintiff and the plaintiff's employer and the registration of the C–FAOT. Plaintiff counters with the argument that the allegedly defective aircraft was manufactured in Texas and, as far as his products liability claim is concerned, Texas law should apply. Plaintiff's point is well taken.

Texas follows the formulation of products liability principles set out in Section 402A of the *Restatement 2d of Torts. McKisson v. Sales Affiliates, Inc.*, 416 S.W.2d 787 (Tex.1967); *Reyes v. Wyeth Laboratories,* 498 F.2d 1264 (5th Cir. 1974). The rationale behind Section 402A's pronouncement that liability for harm caused by a product will rest on the seller or manufacturer of an unreasonably dangerous, defective product has been fully discussed. Citing Comment

C to (Section 402A, the court in *Bailey v. Boatland of Houston, Inc.*, 585 S.W.2d 805 (Tex.Civ.App.—Houston, [1st Dist.] 1979 no writ) found that the relevant policy considerations included:

> . . . the justification . . . that the seller, by marketing his product for use and consumption, has undertaken and assumed special responsibility toward any member of the consuming public who may be injured by it; . . . that public policy demands that the burden of accidental injuries caused by the products intended for consumption be placed upon those who market them, and be treated as a cost of production against which liability insurance can be obtained . . .

585 S.W.2d 805 at 809, citing *Restatement 2d of Torts* § 402A Comment C.

Applying the principles listed in Section 6 of the Restatement Second of Conflicts to the liability question, it becomes evident that Texas has significant interests with regard to this issue. The judiciary of Texas has affirmatively implemented the means to advance the policies implicit in the Restatement Second of Torts, by its adoption of Section 402A. In so doing, Texas has recognized a paternalistic interest in protecting its citizens from, and compensating them for, injuries resulting from defective products. That particular concern is not directly involved in this case because of the fact that the injured Plaintiff is a Canadian citizen. That policy is involved, however, to the extent that it seeks to spread the financial burden of injuries suffered by consumers, regardless of nationality, as widely as possible through the use of liability insurance or through the treatment of liability costs as business expenses by Texas concerns.

Another policy given effect by the adoption of Section 402A is the desire to regulate the conduct of Texas manufacturers. The existence of possible liability for injuries from defective products will, to a degree at least, serve as an incentive to reduce the hazardous nature of certain products, encourage safer design, and in-

duce Texas companies to more carefully control their manufacturing processes. A related interest in this connection is the evident desire to force those Texas companies that fail to put adequate care into the development and marketing of products to accept the responsibility for that lack of concern.

All of these interests would be given effect by the application of Texas law to the liability issue. Bell is a Texas company with a worldwide clientele. Texas is certainly interested in seeing that Bell markets the safest product possible, because the economic results of a safe product and a good reputation are directly and indirectly beneficial to the state. Therefore, all of the interests discussed above would be applicable if Texas law is held dispositive.

A second Section 6 factor that would tend to favor the use of Texas law is the ease in the determination and application of the law chosen. *Restatement 2d of Conflict of Laws,* § 6(2)(g). This Court, sitting as it does in Texas is familiar with the principles of Texas tort law and could easily apply it to this case. Additionally, the ease with which the law of Texas can be determined. as opposed to that of Canada, will help achieve predictability and uniformity of results. *Restatement 2d of Conflict of Laws* § 6(2)(f). This Court can more consistently apply legal principles with which it is well acquainted, and for which a greater body of source authority is available.

Bell has submitted evidence to the Court in support of the conclusion that the Canadian province of British Columbia, the domicile of Plaintiffs, does not recognize a strict liability cause of action. Were this case to be tried in British Columbia, Plaintiffs would be forced to base their claim against Bell in negligence. *Appendix A to Defendant Bell's Motion for Determination of Foreign Law,* at p. 2. A real conflict is thus presented. The fact that British Columbia has failed to adopt an equivalent to § 402A exhibits governmental interests which support the application of Texas law to Baird's claim against Bell. An evident policy of British Columbia is to protect its citizen manufacturers from excessive liability resulting from the distribution of domestic products. It is clear that this interest is not involved in the products liability aspect of this case because the allegedly defective product and its manufacturers are both Texan. British Columbia would presumably be uninterested in the outcome of a products case involving a Texas defendant. Along with its desire to insulate its citizens from excessive liability, however, British Columbia is likely to have the implicit paternalistic interest in seeing that its injured citizens are compensated and that those parties causing their injuries are held responsible. That interest would be furthered by the application of Texas law.

From the foregoing analysis, it is clear that Texas law should apply to the liability aspects of Plaintiff's cause of action against Bell. Bell argued in briefs that there are a substantial number of important Canadian contacts in this case and that, therefore, Canadian law should apply. While that assertion may be true with regard to the third-party aspects or the damage issues of this lawsuit, as between Baird and Bell, the analysis so clearly mandates the use of Texas products liability law that this issue very nearly represents a false conflict. Cavers, *The Choice of Law Process,* at 89 (1965).

Other courts have reached similar conclusions in products liability cases. In circumstances very similar to the instant facts, the court in *Melton v. Borg-Warner Corp.,* 467 F.Supp. 983 (D.C.W.D.Tex.1979) held that Texas law should apply. Plaintiff in that case was injured when a helicopter he was piloting crashed near Augsberg, West Germany. Answering Plaintiff's strict liability claim, defendant argued that under the then valid Texas *lex loci* rule, *Smith v. General Motors Corporation,* 382 F.Supp. 766 (D.C.N.D.Tex.1974) *aff'd,* 526 F.2d 804 (5th Cir. 1976), *Marmon v. Mustang Aviation, Inc.,* 430 S.W.2d 182 (Tex.1968), the law of Germany should determine the rights and liabilities of the parties. Even though the opinion was written before the *Gutierrez* case was decided, the court in *Melton* analyzed the case as suggested by

Section 145 of the *Restatement 2d of Conflicts,* and decided that, because the helicopter was designed, built and placed in the stream of commerce in Texas, and that the allegedly defective parts were delivered by defendant to the manufacturer in Texas, the significant contacts were overwhelmingly in Texas.

A similar result was reached in *Couch v. Mobil Oil Corp.,* 327 F.Supp. 897 (D.C.S.D. Tex.1971). In that case, plaintiff, a Texas resident, was injured while working for defendant in Libya. Although the complaint sounded in negligence and not strict liability, and in spite of the continuing existence of the *lex loci* rule, the court employed the same sort of analysis adopted in *Gutierrez,* noting that the plaintiff was a Texas resident; that from the time of the accident he has been hospitalized and treated in Texas; that plaintiff was hired in Texas and that if he did not recover from his injuries, he would be a charge of Texas, the court chose to apply Texas law to the case. 327 F.Supp. at 905.

In sum, and based upon the foregoing discussion and authorities, this Court finds that Texas' products liability law should be applied to Plaintiff Baird's liability claim against Defendant Bell Helicopter.

### (b) *The Third-Party Claim*

Defendant Bell has brought third-party claims against the three Canadian third-party defendants, seeking contribution and indemnity from them for any damages awarded to Plaintiff. Bell's complaint is based in negligence. Bell claims that the injuries suffered by Baird were a result, in whole or in part of Canadian, Okanagan or LSJ's negligent maintenance and repair of the aircraft. This Court must now engage in a "significant contacts" analysis with respect to this aspect of the case.

There are only two jurisdictions involved in Bell's third-party action against Okanagan, Canadian and LSJ (the "Canadian companies,"); Canada and Texas.

Texas law is quite clear on the subject of third-party claims for contribution and indemnity. Under common law, there was no right to contribution. This was based on a

public policy not to allow a wrongdoer to have a right of recovery on his own wrong. *Wheeler v. Glazer,* 137 Tex. 341, 153 S.W.2d 449 (1941). That general rule was changed by statute. *Tex.Rev.Civ.Stat.Ann.* Art. 2212 provides in part:

> Any person against whom, with one or more others, a judgment is rendered in any suit on an action arising out of, or based on tort, except in causes wherein the right of contribution or of indemnity, or of recovery, over, by and between the defendants is given by statute or exists under common law, shall, upon payment of said judgment, have a right of action against his co-defendant or co-defendants and may recover from each a sum equal to the proportion of all of the defendants named in said judgment rendered to the whole amount of said judgment.

It has been held that Art. 2212, rather than *Tex.Rev.Civ.Stat.Ann.* Art. 2212a, the comparative negligence statute, operates in a situation involving co-tortfeasors, one of whom is liable under strict liability theory and one of whom is liable in negligence. *General Motors Corp. v. Simmons,* 558 S.W.2d 855 (Tex.1977). The notion of enforced contribution among several co-tortfeasors is based on the fact that each party defendant against whom such contribution is sought breached a duty owed to the injured party. *Austin Road Co. v. Pope,* 147 Tex. 430, 216 S.W.2d 563 (1949). Accordingly, no right of contribution exists from a party against whom the injured party has no cause of action. *Grove Manufacturing Co. v. Cardinal Construction Co.,* 534 S.W.2d 153 (Tex.Civ.App.—Houston [14th Dist.] 1976 writ ref'd n. r. e.). It is not necessary, however, for a plaintiff to name all potential tortfeasors as defendants. One defendant may bring other potential defendants into a suit through impleader for contribution purposes. 13 Dorsaneo *Texas Litigation Guide,* § 291.03[2].

The terms of the statute make it inapplicable in situations where a common law right to indemnity or contribution exists. *Art.* 2212, *supra.* Because there was

no common law right to contribution in Texas, *Wheeler v. Glazer, supra*, the statutory language actually results in the prohibition of contribution where a party has a right to indemnity. 13 Dorsaneo, *Texas Litigation Guide*, § 291.03[1]. (1979)

Indemnity, the right of one co-defendant to recover from another *all* money paid to an injured party is available in Texas if one of four tests is met, only one of which is relevant to the instant facts. The court in *Wheeler v. Glazer, supra*, discussed an indemnity claim in terms of differing degrees of culpability. Whether or not any of the defendants in this lawsuit can meet this test remains to be seen. At this point, however, contribution and/or indemnity is certainly not ruled out as a matter of law, and if Bell is entitled to one or the other, Texas definitely has a paternalistic interest in insuring that its citizens are not forced to incur liability that they would not have to assume responsibility for under Texas law.

Similarly, although it appears likely that common law indemnity principles are not applicable to this case, *See General Motors Co. v. Simmons, supra; Heil Co. v. Grant*, 534 S.W.2d 916 (Tex.Civ.App.—Tyler 1976, writ ref'd n. r. e.); *South Austin Drive-In Theatre v. Thomison*, 421 S.W.2d 933 (Tex. Civ.App—Austin 1967, writ ref'd n. r. e.), Texas still has an interest in applying its contribution statute, *Tex.Rev.Civ.Stat.Ann.* Art. 2212 in favor of a Texas citizen. That statute has been applied in a number of cases involving injuries caused by a defective product and the negligence of a co-tortfeasor. *See Dover Corp. v. Perez*, 587 S.W.2d 761 (Tex.Civ.App.—Corpus Christi— 1979 no writ); *Ford Motor Co. v. Russell & Smith Ford Co.*, 474 S.W.2d 549 (Tex.Civ. App.—Houston [14th Dist.] 1971, no writ).

The Canadian law concerning indemnity and contribution appears to be quite similar to its counterpart in Texas. The Contributory Negligence Act, *B.C.Rev.Stat.*, ch. 74 (1970) sets out Canada's legislative solution to the problems of joint tortfeasors and negligent plaintiffs. Subchapter 5 of *B.C. Rev.Stat.*, ch. 74 provides:

Where damages or loss has been caused by the fault of two or more persons, the court shall determine the degree in which each person was at fault, and . . . where two or more persons are found at fault they are jointly and severally liable to the person suffering the damage or loss, but as between themselves, in the absence of any contract express or implied, they are liable to make contribution to and indemnify each other in the degree in which they are respectively found to have been at fault.

*See also Arnold et al. v. Teno et al.*, 83 D.L.R.3d 609 (1978). Because there is no real conflict as to the availability of contribution, it is evident that the interests of both Texas and British Columbia are substantially similar with regard to the relationships between Bell and the Canadian group, assuming that one or more of the corporations is found to have partially caused Plaintiff's injuries. That similarity, unfortunately does not end the inquiry. Subchapter 5 of the Comparative Negligence Act, combined with subchapter 3 of the statute creates a system of damage apportionment analogous to but slightly different from Art. 2212. The Texas rule provides for a pro-rata division of liability on a judgment between joint tortfeasors. The foreign system apportions liability between tortfeasors based on their percentage of fault. Thus, although the concept of contribution does not differ from jurisdiction to jurisdiction, the method of calculation is dissimilar. The Texas Supreme Court recently provided some insight into the nature of the conflict. In *General Motors Corp. v. Simmons, supra*, the court, holding that Art. 2212 should apply to the facts before it, stated that "The present state of the statutory law [of Texas] permits apportioning contribution upon comparisons of negligent conduct among negligent tortfeasors. It does not provide any mechanism for comparing the causative fault or percentage causation of a strictly liable manufacturer with the negligent conduct of a negligent co-defendant." 558 S.W.2d at 862. Further, the fact that the choice of methodology applicable to this

case could have considerable impact on the amount of damages, if any, for which each defendant will be liable involves real interests of the two jurisdictions. *Gutierrez* analysis is therefore necessary.

Addressing § 145 of the Restatement 2d of Conflicts first, the following contacts exist: (a) the injury occurred in neither of the two jurisdictions involved here; (b) the conduct causing the injury occurred in either Texas, Canada or Surinam, or any combination of the three depending on the proof; (c) the domicile, residence and nationality of the parties involved here is either Texas or Canada; and (d) the relationship between Bell and the Canadian group is centered in Texas. The latter finding is based on the various service, training, franchise and sales agreements entered into between Bell and members of the Canadian group which were discussed earlier with regard to the motions to dismiss.

The contacts noted above must be considered in light of the factors enunciated in § 6 of the Restatement 2d of Conflicts. *Gutierrez v. Collins, supra.*

(1) *Needs of the International System*

"Choice-of-law rules, among other things, should seek to further harmonious relations between states and to facilitate commercial intercourse between them." *Restatement 2d of Conflict of Laws* § 6 comment d. The decision this court must make is not likely to have any great international repercussions. Neither will the resolution of this problem have any substantial effect on commercial intercourse between Texas and Canada.

Any possible ill will or commercial disincentive which could result from this court's decision on this point would necessarily involve the size of the jury award, if any, and the determination of the relative liabilities of the parties. It could be that the jury will hold the members of the Canadian group blameless, in which case it would make no difference which jurisdiction's contribution system was used. Additionally, no matter which statute is applied to this case, the possibility exists that one or more of the Canadian group will be required to

bear more liability than Bell, or vice versa. Therefore, the risk of liability is basically the same for each party no matter which method is adopted. Thus, the analysis on this point is inconclusive and no effect on international good will or trade relations can be determined to a sufficient degree of certainty to indicate which jurisdiction's law should apply.

(2) *The Relevant Policies of the Forum*

Texas has exhibited definite policies with regard to the use of its contribution statute. The pro-rata apportionment system reflects the judgment that apportioning liability based on fault is a difficult and inexact process that is likely to lead to unjust results. Art. 2212a rejects this notion with regard to tort actions based in negligence. The Texas Supreme Court in the *Simmons* case, *supra*, however, recognized the difficulty of a comparative fault approach to damage apportionment when strict liability and negligence are both involved in a lawsuit. The court in *Simmons* called for legislative attention to the problem with no result, thus indicating a desire to continue to have courts apply Art. 2212 to lawsuits of this type.

Another related policy behind Art. 2212's apportionment scheme is the desire to minimize inconsistency in the Texas courts. A pro-rata system removes from the jury the decision as to the quantum of fault between two or more co-tortfeasors. Juries cannot, therefore, arrive at different evaluations of liability in similar situations. This policy of the legislature, along with the judicial desire to avoid the theoretical complications involved in a comparison of negligence and strict liability would both be adversely impacted by this Court's decision to utilize foreign law. This Court would be required to compare the two dissimilar theories for the purpose of arriving at degrees of fault in a manner that the Texas Supreme Court has declined to do without further legislative guidance.

Texas has an interest in seeing its policies applied to this case separate and apart from its status as the forum; the Defendant Bell is a Texas citizen. Texas is therefore con-

cerned about the application of its own laws to its own citizens. Further, to the extent that Art. 2212 represents a considered judgment as to the best way to apportion liability between a manufacturer and a negligent third party in this type of situation in order to provide incentives to produce safely designed and carefully manufactured products, Texas has an interest in imposing Art. 2212 on the parties in this case. Finally, Texas has arrived at a system to be used in situations like this involving one of its domiciliary corporations. At present, when a domestic company's defective product combines with another's negligence to cause injuries to a third person, Texas has deemed it proper to limit the manufacturer's liability to a maximum of 50% of the damages awarded.

The application of the law of British Columbia on this point would have the effect of contravening that policy because a jury could find that Bell's percentage of contribution should be greater than 50%. Again, because a Texas domiciliary would be forced to bear a greater liability than the state's legislature has deemed proper, Texas has a real interest in seeing its law applied.

### (3) The Relevant Policies of Other Interested State

After having disposed of Surinam as an interested state, Canada is the remaining jurisdiction connected with this lawsuit. Like Texas, British Columbia, through the adoption of its Contributory Negligence Act, *supra*, has exhibited a policy of loss distribution among responsible tortfeasors. The method of apportionment, however, indicates a willingness to confront the complicated theoretical problems involved in fault allocations among negligent and strictly liable co-tortfeasors. The British Columbian legislature evidently weighed the problems of inconsistency and complexity against the capacity of a system of damage apportionment based on fault to produce fairer results and decided that fairness considerations predominated. The foreign statute also shows a desire on the part of the legislature of that country to protect its domiciliaries from excessive liability. Finally,

there is a general paternalistic interest on the part of British Columbia in seeking that its own laws are applied to its citizen defendants.

British Columbia also has relevant policies regarding its damaged citizens. It has a general desire to see that they are compensated for injuries suffered. Baird is a ward of Canada and he received almost all of his medical treatment there. He will presumably continue to be a recipient of state funds unless he is adequately recompensed, and British Columbia is probably interested in keeping its welfare or medical aid beneficiaries at a minimum.

Some, but not all of these policies would be suppressed by the application of Art. 2212 to these facts. A pro-rata apportionment could result in liability for damages greater than the percentage of fault attributable to each member of the Canadian group. The potential unfairness involved in the concept of liability based on a pro-rata share of Plaintiff's damages is precisely what the British Columbian legislature attempted to avoid with the Comparative Negligence Act, *supra*. The overall policy in favor of damage apportionment, however, would not be affected by the use of Texas law. Further, the desire to see injured Canadian citizens made whole through the award of money damages will be satisfied regardless of which jurisdiction's rule is used.

On balance, this factor in the § 6 analysis supports the use of Canadian law on this point, as strongly as the examination of the forum's policies supports the use of Texas rules of contribution. *See* subparagraph (2), *supra*. Were the analysis to end here, the choice between the law of the two jurisdictions would be difficult indeed. There are, however, four additional factors to be considered.

### (4) Protection of Justified Expectations

The authorities of § 6 of the Restatement 2d of Conflicts felt that this factor would not be very important in negligence cases where parties act without a consideration to the law which will later apply to the consequences of their conduct. § 6, *supra*, com-

ment g. This Court is inclined to agree. Bell manufactures aircraft which are sold worldwide. It cannot be said to have relied on the application of any particular jurisdiction's contribution statute. Similarly, none of the Canadian group consciously acted in such a way so as to conform to the negligence law of either Canada or Texas.

(5) *Policies Underlying the Field of Law*

[12] As stated earlier, the basic policy behind the law of contribution is that, because multiple tortfeasors have both breached a duty to the injured third person, a co-defendant should not be held liable for damages for which it is not responsible. *Austin Road Co. v. Pope, supra.* Rejecting the "quality of negligence" distinction used as a basis of indemnity, *Wheeler v. Glazer, supra,* the Texas Supreme Court has recognized that, for contribution purposes, there is no difference in culpability between a negligent and a strictly liable co-tortfeasor. *General Motors Corp. v. Simmons, supra.* "[C]ontribution is intended to equalize the ultimate responsibility among joint tortfeasors." 13 Dorsaneo, *Texas Litigation Guide* § 291.03[1].

British Columbia's contribution statute is similar in function to *Tex.Rev.Civ.Stat.Ann.* Art. 2212a, basing the contribution obligations of co-defendants on the percentage of fault attributable to each. It also seeks to spread responsibility for injury among joint tortfeasors. Unlike Art. 2212, however, instead of equalizing liability, the Contributory Negligence Act, *supra,* goes a step further with the damage apportionment policy.

The added complication of fault attribution does not reflect a difference in the basic attitude about contribution. Instead, it indicates the differences in the tort theories of Texas and Canada upon which the need for contribution is based. By letter brief from counsel in Canada, Bell has sought to prove to the Court the nature of Canadian law regarding a personal injury caused by a product.

If Mr. Baird were to bring his action against the Defendant Bell . . . in the Province of British Columbia the actionable fault upon which he would have to base his claim is *negligence.* In order to establish negligence, Mr. Baird would have to prove, in the circumstances of this case, that:

1. The accident was caused or contributed to by a defect in the aircraft.

2. That the defect was the result of some act or omission of the Defendant, its servants or agents . . . .

3. That it was reasonably foreseeable that the act or omission complained of could cause injury or change to the Plaintiff.

*Appendix A to Defendant Bell's Motion for Determination of Foreign Law,* at p. 2. There is apparently no product or strict liability cause of action in British Columbia. Therefore, the case before the Court, were it to be tried under Canadian law, would be entirely in negligence theory. The complications regarding contribution that were directed to the legislature by the Court in *Simmons, supra,* would not be involved in this case. It cannot be said, therefore, that the Canadian statute represents a conscious decision to apply comparative negligence principles to these facts. It could be that faced with a set of legal principles similar to those addressed in *Simmons,* a Canadian court would perceive the complications involved and arrive at the same result.

Because the Texas system represents a specific response to the facts before this Court, the Court is of the opinion that Texas law would better serve the policies underlying the law of contribution.

(6) *Certainty, Predictability and Uniformity of Result*

It is clear that Texas law would lead to more uniform results than would the Canadian statute. Assuming that each of the four defendants in this lawsuit was found to have contributed to Baird's injuries, and assuming the solvency of all of the parties, this Court could determine the percentage of damages for which each defendant would be liable. That result would be the same in any case, given the presence of the same number of parties and involving the same legal theories. The Texas rule yields quite predictable and uniform results. The Cana-

dian system has the potential for producing inconsistent verdicts. Because the percentage liability is to be determined by the Court in each case, *B.C.Rev.Stat.* ch. 74, subchapter 5, it could be that no two lawsuits involving negligent and strictly liable co-defendants would result in equivalent damage apportionment figures. From the evidence submitted to the Court on this point, it is unclear whether the judge or the jury makes the determination regarding the amount of damages, or indeed whether this sort of case is even tried before a jury. Regardless of where the discretion lies concerning the amount of damages, the combination of two discretionary decisions about damages and percentage of fault must necessarily lead to inconsistent results. It would be difficult to predict the outcome of a given case.

The analysis of this *Gutierrez* factor strongly argues in favor of the application of Texas law. A pro-rata system of damage attribution can be more consistently applied than a scheme that assesses responsibility for damages. This is especially true where, as in this case, the jury would be ahead to compare fault under two related but dissimilar theories of liability. Texas law would best serve the desire for uniformity.

**(7)** *Ease in Determination and Application of Law to be Applied*

This factor also strongly supports the use of the Texas system. Because Texas is the forum state, this Court is familiar with Texas' strict liability, negligence and contribution principles. Although it would not be impossible for the parties to educate this Court on the nature of relevant Canadian law, it would undoubtedly be more difficult a task than the parties would be required to undertake if Texas law is applied. Texas law, in part because of the ready availability of precedent, and in part because of its familiarity, would also be easier to apply to this case.

The foregoing analysis has left this Court with the conclusion that *Tex.Rev.Civ.Stat. Ann.* Art. 2212 should and will apply to Bell's action for contribution against the three Canadian third-party defendants. Because of the fact that the *Gutierrez* opinion was handed down only a few months ago, there is no Texas authority on the question. Similar analysis in opinions from other jurisdictions that have adopted Section 6 and 145 of the Restatement 2d of Conflict of Laws tends to support both this Court's decision to apply Texas law to the controversy between Bell and the three third-party defendants, and the method used to reach that conclusion.

The court in *Casey v. Manson Construction Company*, 247 Or. 274, 428 P.2d 898 (1967) based its decision on an analysis of legislative policy and adopted the law of Washington, the state where both the accident and the conduct causing the accident occurred. In spite of a specific legislative enactment in Oregon allowing recovery for loss of consortium, the Oregon court applied Washington law which did not permit damages to be based on loss of consortium. That decision was based on the court's perception of fairly generalized Washington policies. That state was held to approve of insuring that damages for loss of consortium are not recovered from Washington domiciliaries when the conduct causing the accident occurred there. Washington was also found to be in favor of protecting reasonable expectations on the part of its citizens that liability for negligent conduct will be governed by Washington laws. Thus, the Oregon court undertook an analysis of governmental interests and policies to determine which jurisdiction's law should apply.

A similar determination was made using the Restatement 2d method by the court in *Johnson v. Spider Staging Corp.*, 87 Wash.2d 577, 555 P.2d 997 (1976). This wrongful death action was brought by the wife of the deceased, both Kansas citizens, against a Washington corporation. Kansas law provided for a $50,000 damage limitation in wrongful death cases. Washington law had no such limitation. After listing the contacts each state had with the litigation, the court engaged in a governmental interest analysis. Kansas' interest in limit-

ing wrongful death recovery was perceived to be based in a desire to protect in-state defendants from excessive financial burden, speculative claims and difficult computations. The Washington court noted that this was a local interest, designed to protect Kansas defendants. Since there was no Kansas defendant, and since unlimited wrongful death recovery would help further the regulatory interest both states have in deterring tortious conduct, the court applied Washington law to the case. Similar analysis was used in *Issendorf v. Nelson*, 194 N.W.2d 750 (N.D.1972), *Beaulieu v. Beaulieu*, 265 A.2d 610 (Me.1970), *Kennedy v. Dixon*, 439 S.W.2d 173 (Mo.1969), and *Mellk v. Sarahson*, 49 N.J. 226, 229 A.2d 625 (1967); *See also Couch v. Mobil Oil Corp., supra* (Restatement-type interest analysis used in a *pre-Gutierrez* context).

It is apparent from the cases noted above that courts using the Restatement method to resolve choice of law problems place a great deal of importance on the policies of the jurisdictions involved. Having examined the policies, both explicit and implicit, of the Texas and Canadian governments in this case, as well as addressing the other facts set out in Sections 6 and 145 of the Restatement 2d of Conflict of Laws, this Court finds that Texas Art. 2212 should apply to the relationship between Bell and the Canadian group.

### (c) *Damages*

There is one area of conflict left to be resolved. Defendant Bell asserts that the law of Canada should determine the amount of damages recoverable by Baird. Plaintiff, on the other hand, urges that this question should be governed by Texas law. This Court must therefore examine the relevant law of the two jurisdictions to ascertain whether there is a true conflict between them. Inquiring into the damage recovery principles of the two jurisdictions reveals that there is a true conflict between Texas and Canadian law with regard to at least part of the rules of damage calculation.

There appears to be no great divergence of opinion between the two governmental entities involved on the question of measurement and calculation of pecuniary damages.

When calculating the damage award the proper method of proceeding is to give the injured party an award for future care which makes no deduction in respect of the basic necessities for which he would have had to pay in any event. A deduction must then be made for the cost of such basic necessities when computing the award for loss of prospective earnings, *i. e.*, the award is on the basis of net earnings and not gross earnings. . .

In establishing the figures for pecuniary loss, the proper approach is to use present rates of return on long-term investments and to make some allowances for the effects of future inflation. No deduction should be made for tax which might have been attracted had income been earned over the working life of the plaintiff. Similarly, no consideration should be taken of the amount by which the income from the award will be reduced by payment of taxes on the interest, dividends, or capital gain.

*Andrews v. Grand & Toy Alberta, Ltd.*, 83 D.L.R.3d 452, 453–54 (1978).

This formulation of that part of a damage award dealing with actual damages and expenses is very similar to its Texas counterpart. In a personal injury action, such as the instant case, the plaintiff is entitled to recover a cash amount, the present value of which will compensate him for losses disclosed by the evidence. *El Paso Electric Co. v. Gregston*, 170 S.W.2d 515 (Tex.Civ. App.—El Paso 1942, no writ) "Numerous factors are to be considered in determining . . . the amount of [plaintiff's] recovery. Included are the reasonable and necessary expenses incurred as a result of the injury, loss of earnings antecedent to the time of the trial, diminished capacity to labor and earn money in the future, [and] loss of profits. . . ." 17 Tex.Jur.2d Damages, § 99 at p. 170, *See Hernandez v. United States*, 313 F.Supp. 349 (D.C.N.D.

Tex.1969). The effects of inflation may also be taken into account. *Roberts v. Tatum*, 575 S.W.2d 138 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n. r. e.). Because damages for personal injuries are largely unliquidated, the jury has discretion in fixing the amount. *Landreth v. Reed*, 570 S.W.2d 486 (Tex.Civ.App.—Texarkana 1978, no writ).

A cursory comparison of the principles outlined above indicates that there is no real conflict between the laws of Canada and Texas with regard to the recoverability and calculation of "tangible" damages, that is, items of recovery involving expenses, loss of earnings and the like. Because there is no significant difference between the two jurisdictions on this point, this Court will apply the law of the forum to the classes of damages discussed above. The *Gutierrez* analysis would lead to this result because of the interest in Texas applying its law, the ease with which a court sitting in Texas can determine that law and apply it to particular cases, and the greater likelihood of certainty and predictability of result arising out of the Court's familiarity with Texas law. These factors, coupled with the fact that the relevant policies of Canada do not conflict with those of Texas in this instance, that Texas is the place where the conduct causing the injury allegedly occurred, and that Texas is the domicile of the Defendant Bell, support this Court's conclusion that Texas law should and will be used on the question of compensatory damages for past and future expenses and loss of profits, earnings and earning capacity. This result is consistent with the determination in some jurisdictions that the laws of the forum are to be favored, especially when there is no real conflict involved. *See Hurtado v. Superior Court of Sacramento County*, 11 Cal.3d 574, 114 Cal.Rptr. 106, 522 P.2d 666 (1974).

However similar the laws of Texas and Canada may be with regard to compensatory damages, they are widely divergent in the areas of compensation for pain and suffering. Texas "law recognizes that pain is a proper item for recovery; that it is susceptible only for an approximate monetary evaluation, that jurors may arrive at a figure from their common knowledge and sense of justice, and that counsel may suggest what they believe the evidence will support." *Hernandez v. Baucum*, 344 S.W.2d 498, 500 (Tex.Civ.App.—San Antonio 1961, writ ref'd n. r. e.) cited in *Sunset Brick & Tile, Inc. v. Miles*, 430 S.W.2d 388, 390 (Tex.Civ.App.—Corpus Christi 1968, writ ref'd n. r. e.). Although damages of this type are intangible, they are real elements of a damage award even though they do not result in a loss of earnings. *Mikell v. LaBeth*, 344 S.W. 702 (Tex.Civ.App.—Houston 1961, writ ref'd n. r. e.) Recovery may also be had for future pain and suffering if the evidence indicates that there is a reasonable probability that pain will continue to occur in the future. *V. J. Keefe, Inc. v. Huddleston*, 459 S.W.2d 224 (Tex.Civ.App.—Beaumont 1970, no writ); *See also Fisher v. Coastal Transport Co.*, 149 Tex. 224, 230 S.W.2d 522 (1950). Because of the speculative nature of these types of recovery, it is peculiarly within the province of the jury to make findings as to damages for pain and suffering, and such findings will be overturned only if the amount awarded is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Ruffo v. Wright*, 425 S.W.2d 663 (Tex.Civ.App.—San Antonio 1968, no writ); *See also, Houston v. Glover*, 355 S.W.2d 757 (Tex.Civ.App.—Waco 1962, writ ref'd n. r. e.). Additionally, types of mental suffering, such as humiliation, have been allowed as a basis for recovery even though there was no actual physical pain involved. *See Houston Lighting & Power Co. v. Reed*, 365 S.W.2d 26 (Tex.Civ.App.—Houston 1963, writ ref'd n. r. e.), *Floyd v. Organ*, 359 S.W.2d 190 (Tex.Civ.App.—Austin 1962, writ ref'd n.r.e.), *Missouri & Pacific Ry. Co. v. Handley*, 341 S.W.2d 203 (Tex.Civ.App.—San Antonio 1960, no writ).

Under this tort law formulation, Texas plaintiffs have, in particular cases, received large awards for pain and suffering and mental anguish. In *V. Mueller & Co. v. Corley*, 570 S.W.2d 140 (Tex.Civ.App.—Houston [1st Dist.] 1978, writ ref'd n. r. e.),

the plaintiff was awarded $170,000 damages for largely non-pecuniary losses. The court in *Coastal States Gas Producing Co. v. Locker*, 436 S.W.2d 592 (Tex.Civ.App.—Houston [14th Dist.] 1968, no writ) modified a jury award of $400,000 for mental anguish, mental impairment and reduced earning capacity. The court affirmed the award, ordering a remittitur of $100,000. Finally, the court in *Santa Rosa Medical Center v. Robinson*, 560 S.W.2d 751 (Tex. Civ.App.—San Antonio 1977, no writ) while ordering a remittitur on part of a jury award in a personal injury case dealing with loss of past and future earnings, affirmed a jury award for past and future physical pain and mental suffering in the amount of $115,000.

The Canadian Supreme Court has unequivocally addressed the question of these types of non-pecuniary losses.

The sheer fact is that there is no objective yardstick for translating non-pecuniary losses, such as pain and suffering and loss of amenities, into monetary terms. This area is open to widely extravagant claims. It is in this area that awards in the United States have soared to dramatically high levels in recent years. Statistically, it is the area where the danger of excessive burden of expense is greatest.

It is also the area where there is the clearest justification for moderation.

*Andrews v. Grand & Toy Alberta, Ltd.*, 83 D.L.R.3d 452, 476 (1978). The court in *Andrews* adopted a functional analysis for dealing with non-pecuniary losses. It tries to determine the compensation necessary to provide the injured party " 'with reasonable solace for his misfortune.' 'Solace' in this sense is taken to mean physical arrangements which can make his life more endurable rather than 'solace' in the sense of sympathy." *Id.* " '[T]he money is not then a recompense for a loss of something having a money value. It is given as some consolation or solace for the distress that is the consequence of a loss on which no monetary value can be put.' " *Skelton v. Collins*, 39 A.L.J.R. 480, 495 (1966) cited in *Andrews v. Grand & Toy Alberta, Ltd., supra* at 476.

The court continued, stating that "[i]f damages for non-pecuniary loss are viewed from a functional perspective, it is reasonable that large amounts should not be awarded once a person is properly provided for in terms of future care for his injuries and disabilities." *Andrews v. Grand & Toy Alberta, Ltd., supra* at 477. In conclusion, the Court "adopt[ed] as the appropriate award in the case of a young adult quadriplegic like Andrews the amount of $100,000. Save in exceptional circumstances, this should be regarded as an upper limit of non-pecuniary loss in cases of this nature." *Id.* at 478.

Clearly, then, Canadian courts have taken quite a different theoretical approach to damages for pain and suffering, setting a ceiling of $100,000 for such damages, a limit which, as seen above, has been exceeded by Texas courts on numerous occasions. Rather than giving wide discretion to the jury to determine the total of an award for pain and suffering, the Canadian courts have adopted an analytical framework which theoretically prohibits large damage awards. It is apparent that, as to that part of the damage award intended to compensate Plaintiff for "non-pecuniary" losses, there is a conflict between the two jurisdictions involved. Therefore, this Court must once again engage in the *Gutierrez* analysis.

The injury occurred in Surinam. That Section 145 factor, thus, has no relevance to this question. Texas is the place where the conduct occurred which Plaintiff alleges caused the accident. Bell's third-party action is based on the claim that the crash resulted from repairs carried out in either Canada or Surinam. These claims, added to the fact that all of the parties are either Texas or Canadian domiciliaries strongly implicates both jurisdictions in this lawsuit.

With these contacts in mind, an analysis of the factors enumerated in Section 6 of the Restatement 2d of Conflicts requires that Canadian law be applied to the non-pecuniary aspects of Plaintiff's damage claim. Texas law on this point is indicative of definite policies. Texas has a paternalistic interest in seeing its plaintiffs compensated for pain and suffering as a quantifiable

item of loss. Further, Texas wants its injured citizens to be able to recover a fair and reasonable amount directly related to the facts of particular cases unencumbered by any judicially imposed ceilings. The fact that such awards are not generally limited also exhibits a desire on the part of Texas to compensate injured persons fully enough to permit them to live out their lives without having to depend on state aid. Thus, Texas, is seeking to reduce or limit the burden on its state revenues.

Because the Plaintiff in this case is a Canadian citizen currently residing in Canada, none of the interests implicitly furthered by Texas damage principles apply. Baird will be no burden on the Texas state welfare system and none of his medical care, either past or future will depend on Texas state funds. Further, Texas has no direct concern about the amount of damages awarded to a Canadian domiciliary.

Canada has explicitly disapproved of the possibility of unlimited recovery for a non-quantifiable injury. In so doing, it has exhibited a policy of protecting its domiciliary defendants from excessive liability. It has also shown a desire to see that its injured plaintiffs are adequately cared for and able to live as tolerably as possible under the circumstances. *Warren v. King*, 3A11 E.R. 521 (1963).

All of the Canadian policies flowing from the Court's discussion in the *Andrews* case, *supra*, are relevant here. The plaintiff is Canadian and, therefore, that jurisdiction has a present interest in seeing its law applied. Further, because the third-party defendants are Canadian citizens and they face the possibility of partial liability for Plaintiff's damages, if any, the Canadian policy of protection for its defendants is also directly involved in this case. Both of these policies would be circumvented if Texas law was applied. Similarly, Texas must also have an implicit interest in protecting its citizen defendants from excessive liability. This desire would be furthered if Canadian law is applied. Canada has affirmatively adopted this particular method of damage calculation as the best

way to deal with a difficult problem. An analysis of the interests and policies of both of the jurisdictions involved strongly favors the use of Canadian law.

Both jurisdictions have recognized that the calculation of non-pecuniary damages is a difficult task at best. Texas has provided no real guidelines to assist courts and juries in their assessment of damages for pain and suffering. The courts in Texas have invested juries with complete discretion in the calculation of these types of awards and have reviewed those awards on a case by case basis. Canadian courts, on the other hand, have been given some direction in their effort to arrive at a fair and reasonable damage award. The fact that standards have been enunciated in Canada would tend to assure a greater predictability and uniformity of result in this area of the law. Because these are important values in this as well as other areas of the law, *Restatement 2d of Conflict of Laws*, § 6, comment h, this factor also supports the Court's conclusion that Canadian law should be adopted on this point.

The Texas and Canadian systems of calculation for non-pecuniary losses represent different theoretical stances. The Canadian system approaches damages for pain and suffering not as recovery for loss or for a compensable injury but as a means to make life more endurable. From that position, damages for pain and suffering are curative, seeking to affirmatively aid the injured plaintiff. Texas, on the other hand, deals with damages for pain and suffering as being compensatory in nature; making plaintiffs as whole as possible for losses suffered. A comparison of the policies underlying the two, therefore, would be like comparing apples and oranges and it would not be determinative of the instant problem in any case. Each philosophy of damage recovery will be frustrated if the other is applied and there is no real standard against which to judge the correctness of either. This Court, therefore, declines to weigh this factor in the balance.

Finally, in spite of the ease of application and determination of Texas law flowing

from the fact that Texas is the forum state, this Court cannot hold that Canadian law regarding non-pecuniary damages is inordinately difficult to deal with. This Section 6 factor, therefore, while failing to justify the use of Canadian law, provides weak support for Plaintiff's position that Texas law should apply.

In sum, on the basis of the foregoing discussion, this Court is of the opinion that Canadian principles of damage calculation for non-pecuniary loss should be applied to this case as they are discussed in *Andrews v. Grand & Toy Alberta, Ltd., supra, Thornton, et al. v. Board of School Trustees of School District # 57 (Prince George), et al.,* 83 D.L.R.3d 480 (1978), *Arnold, et al. v. Teno et al.,* 83 D.L.R.3d 609 (1978), and any other relevant statutes or other authority subsequently cited to this Court.

### (d) *Loss of Consortium*

Plaintiff Donnella Laura Baird seeks damages for loss of consortium. Texas has recently recognized that a wife has a right of action for loss of consortium if her husband is injured by the tortious conduct of another. *Whittlesey v. Miller,* 572 S.W.2d 665 (Tex.1978). The province of British Columbia, where Plaintiffs reside, on the other hand, has statutorily eliminated that claim. Family Relations Act, *B.C.Rev.Stat.,* ch. 20 § 4 (1972). There is, therefore, another conflict to be resolved.

It is the opinion of the Court that Canadian law should be applied to Plaintiff Donnella Baird's loss of consortium claim. The analysis used in the preceding section largely applies to this holding as well. Canadian interests are directly relevant, again because the Plaintiff and his spouse are Canadian citizens and residents, and because the third-party defendants are also Canadian. Texas interests in seeing spouses compensated for loss of consortium are not involved here because no Texas citizen has been injured. Texas' paternalistic desire to protect its domiciliary defendants from excessive liability is implicated, however, and that interest would be thwarted if Texas law is applied. Based on these observations and the general discussion in the preceding

section, this Court is of the opinion that Canadian law should apply to Plaintiff Donnella Baird's claim for loss of consortium and that, because such a cause of action has apparently been statutorily abolished in British Columbia, the province of Plaintiffs' residence, such claim is likely subject to dismissal.

Plaintiffs have claimed a substantial amount of damages resulting from loss of consortium, however, and because the evidence submitted to the Court regarding Canadian law on the subject is not extensive, this Court will refrain from dismissing that portion of Plaintiffs' claim for damages from loss of consortium at this time. The defendants are directed to submit further evidence on this point to the Court in the form of a *Fed.R.Civ.P.* 12(b)(6) motion within thirty days of the date of this order.

3. *Third-Party Defendant Okanagan's Motion to Dismiss for Failure to State a Claim upon Which Relief can be Granted.*

Defendant Okanagan has filed a *Fed.R. Civ.P.* 12(b)(6) Motion with this Court that must be addressed at this point. In its motion Okanagan has presented matters outside the pleading. The motion, therefore, will be. treated as a *Fed.R.Civ.P.* 56 Motion for Summary Judgment. *Fed.R. Civ.P.* 12(b).

The thrust of Okanagan's motion is that as a matter of law; (1) Plaintiff Baird was an Okanagan employee at the time of the accident; (2) both Plaintiff and Okanagan were and are covered by the Worker's Compensation Act of the Province of British Columbia at the time of the accident; and (3) Section 10 of said Worker's Compensation Act insulates Okanagan, as Baird's employer, from liability and further exposure, including actions for contribution, for any losses sustained by one of its employees while in the course and scope of his employment.

Defendant Bell answers the motion with two major contentions. First, Bell asserts that if Texas law applies as between Okanagan and Bell, then the motion must be

denied because Okanagan is not a subscriber under the Texas Worker's Compensation Act. Second, Bell claims that a fact issue is present regarding Baird's employment status at the time of the crash. It is Bell's position that Baird was an employee of Surinam Helicopters, Ltd. N.V.i.o., and that, therefore, the Worker's Compensation Act of British Columbia does not insulate Okanagan from liability in this case. Bell has submitted deposition testimony and affidavits in support of its second contention.

It appears to the Court that a fact issue exists as to the employment status of Plaintiff at the time of the crash. This Court notes, without so holding, that the Worker's Compensation Act of British Columbia would have an effect on the liability faced by Okanagan, if it is applied to this case. The identity of Baird's employer is, therefore a material question to be decided.

"Judgment . . . shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed.R.Civ.P.* 56(c). Because this Court is of the opinion that a material fact is in issue with regard to the identity of Baird's employer at the time of the accident, this Court holds that Defendant Okanagan's Motion to Dismiss for Failure to State a Claim upon which Relief may be Granted should be and is hereby DENIED.

If Surinam Helicopters, Ltd. should be found to have been Baird's employer at the time of the accident, it is problematical whether the Worker's Compensation Act of British Columbia would be applicable to this case at all. Therefore, this Court expressly declines to make findings as to the applicability and the effect of that Act with respect to the instant case at this time. Consideration will be given to the question at the appropriate time, should the circumstances require it.

In sum, this Court, by this opinion has made the following findings and holdings:

1. Third-party Defendants Lac St. Jean Aviation, Ltd. and Canadian Helicopters, Ltd.'s Motion to Dismiss for Lack of Jurisdiction is DENIED.

2. This Court holds that the law of the State of Texas is applicable to the liability aspects of Plaintiff's products liability claim against Defendant Bell.

3. This Court further holds that the law of Texas, as contained in *Tex.Rev. Civ.Stat.Ann.* Art. 2212, applies to Defendant Bell's claim for contribution from the third-party Defendants Lac St. Jean Aviation, Ltd., Canadian Helicopters, Ltd., and Okanagan Helicopters, Ltd.

4. This Court further holds that the law of Texas will be applied to Plaintiffs' claims for pecuniary losses.

5. This Court further holds that the law of Canada will be applied to Plaintiff F. C. Baird's non-pecuniary loss claims.

6. This Court further directs the parties to submit additional briefs and authorities on the question of the nature and the applicability of Canadian law with regard to plaintiff D. L. Baird's cause of action for loss of consortium.

7. Finally, third-party Defendant Okanagan's Motion to Dismiss for Failure to State a Claim upon which Relief may be Granted is hereby DENIED.

This Court is aware of a number of discovery motions pending in this case. The Court directs the parties to reurge by letter those motions which are not resolved or made moot by this opinion on or before a date twenty days from the date of this opinion. They will be considered and disposed of at that time.

IT IS SO ORDERED.