VAUGHN, Justice,
dissenting:
Under the Restatement (Second) of Conflict of Laws §§ 145, 146, and 175, the law of Mexico, as the situs of the Appel-lees’ injury, is presumed to apply to the parties’ rights and liabilities unless Texas has a more significant relationship to the occurrence and the parties under the principles set forth in § 6 of the Restatement.[71] Because I believe'the Appellees have successfully rebutted the presumption that Mexican law applies to the substantive issues of this case, I respectfully dissent.
The contacts to be taken into account in applying the principles of § 6 include the four contacts set forth in § 145(2): (1) where the injury occurred, (2) where the conduct causing the injury occurred, (3) the parties’ domicil, residence, nationality, place of incorporation and place of business, and (4) where the parties’ relationship is centered.[72] The contacts and factors are not to be applied by simply counting up the interests on each side, but rather “evaluated according to their relative importance with respect to the particular issue.”[73]
In the case at bar, the § 145(2) factors largely off-set each other as to their relative importance. The first and third factors take due notice that the injury occurred in Mexico, the Appellees reside in Mexico, the Appellant is incorporated in Delaware, and the Appellant’s principal place of business is in Texas. As to the second factor, the design, manufacture, and testing of the allegedly defective part that caused the helicopter crash occurred in Texas. The Appellant argues that the Appellees’ additional claims of design defect and failure to warn lessen the relative importance of Texas as the place where the conduct causing the injury occurred. While this may be true, the second factor still seems to point primarily toward applying Texas law. The fourth factor asks *1061 where the relationship of the parties is centered. Comment (e) to § 145(2) indicates that this factor is considered when there is a relationship between the parties and the injury is caused by an act performed in the course of the relationship.[74] Here, the fourth factor is not applicable.
§ 6 gives seven factors to be considered in determining what law governs the substantive issues of a case.[75] The list is not intended to be exclusive, and “varying weight will be given to a particular factor, or to a group of factors, in different areas of choice of law.”[76]
The first factor examines “the needs of the interstate and international system.”[77] “Choice-of-law rules, among other things, should seek to further harmonious relations between states and to facilitate commercial intercourse between them.”[78] I also recognize that in this case the Appellant contends that international comity is a factor that should lead to the application of Mexican law. While I agree that international comity is a relevant factor in the choice of law analysis, I am not persuaded that it should lead to the application of Mexican law here. There is no persuasive evidence in the record that relations between Mexico and Texas, or commercial intercourse between the two jurisdictions, will be affected by choice of law.
The second § 6 factor to be considered is “the relevant policies of the forum.”[79] Comment (e) of § 6 provides that where the forum state has no interest in the litigation apart from the fact that it is the place of trial, its only relevant policies will be those pertaining to trial administration.[80] I believe that there can be cases in which Delaware appears to have no role in the case other than as being the place of trial, but where the law of another forum is so offensive to an important public policy of Delaware, Delaware’s policy becomes a significant factor in the analysis. In this case, however, I accept the Restatement commentary that Delaware’s interest is limited to trial administration.
The third § 6 factor to be considered is “the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue.”[81] .The laws of Mexico and Texas differ in a number of ways. The distinction that seems to have received the most attention in this case is the manner in which damages are determined in each sovereign. Both parties agree that under Mexican law, damages are calculated under a statutory formula, which Appellant’s counsel described as a “liquidated damages *1062 formula.”[82] Both parties agree that one calculation applies to the passengers and another calculation, or formula, applies to the pilots of the helicopter. The Appellees in this case include the survivors of both categories. The Appellees contend that Mexico’s statutory limit on damages bars a full and fair recovery. The Appellant does not deny that the measure of damages under Mexican law would be less than the measure of damages under Texas law, which seeks to award a full and fair recovery as determined by a jury.
The Superior Court inferred that Mexico’s policy and interest in capping damages is to shield Mexican residents and companies that do business in Mexico from the potentially large financial burden of a damages award.[83] The Appellant disputes this finding, and contends that Mexico seeks to protect injured parties rather than the persons alleged to have injured them. There is support in the record, however, for the conclusion that the purpose of the statutory limit is to protect Mexican defendants from liability for large and uncertain damage awards.[84] Other authorities also support the conclusion that the purpose of the Mexican cap on tort damages is to shield Mexican defendants from large and uncertain damage awards.[85]
For example, in Ford Motor Company v. Aguiniga, all but one of the occupants of a vehicle were killed in an automobile accident that occurred in Mexico.[86] Some of the vehicle’s occupants were residents of Texas, while others were residents of Mexico.[87] In affirming the trial court’s determination that Texas law applied, the. Texas Court of Appeals stated:
Our review of this case established that Mexico has no interest in this litigation. Ford is a United States corporation, not a Mexican corporation. Defendant Marta Valazquez was a Texas resident and United States citizen. This fact establishes that neither defendant is a Mexican resident, citizen, nor business. Therefore, there is not a Mexican defendant who would be protected by the *1063 limitations in damages under Mexican law.[88]
It follows that where a Mexican plaintiff has the option of bringing suit in an American state or federal court against a defendant who is neither domiciled nor doing business in Mexico, Mexico has a significantly diminished interest in having its statutory cap on damages applied. In other words, Mexico’s relationship to the issue of damages is significantly reduced. The Appellant’s argument that Mexico has an interest in seeing that its law of damages is applied here seems quite unpersuasive when one considers that the result would be to limit the Mexican Appellees’ measure of damages to a lesser amount than the one provided under Texas law.[89]
Moreover, the Superior Court in the instant case found that Texas has a strong interest in the regulation of the conduct of manufacturers that have business operations in the state.[90] The Texas system of “tort liability for defective products ‘serves as an incentive to encourage safer design and to induce corporations to control more carefully their manufacturing processes.’ ”[91] “Texas’ interest ‘is particularly strong when the defective product in question was manufactured and placed in the stream of commerce in the State of Texas.’ ”[92] Nothing has been brought to this Court’s attention which appears to contradict these findings.
In Tokio Marine & Fire Ins. Co., Ltd. v. Bell Helicopter of Textron, Inc., a helicopter manufactured by Bell at a plant in Texas crashed in Japan, killing a Japanese construction worker.[93] Plaintiffs, Japa *1064 nese insurance companies, filed suit against Bell alleging negligence, strict liability in tort, and breach of warranty.[94] In determining whether to apply Japanese or Texas law to the plaintiffs’ claims, the federal district court found significance in the following factors: (1) the crash of the helicopter and the injury occurred in Japan, (2) the conduct causing the injury occurred in Texas, (3) the plaintiff insurance companies were located in Japan, (4) the defendant’s principal place of business was Texas, and (5) the relationship of the parties was not centered in any particular country.[95]
In addressing the third § 6 factor, the district court found that “Texas has a strong interest in applying its law to manufacturers of goods in Texas, regardless of whether the persons suffering loss as a result of use of those goods are Texas residents.”[96] The court concluded that Texas had the most significant relationship to the occurrence and the parties, and thus Texas law should apply.[97]
The Majority asserts that Texas has little interest in the remedies available to Mexican citizens, but disregards Texas’ significant interest in holding its companies fully liable for their negligent manufacturing. The application of Texas law would force Bell to accept responsibility for its negligent conduct and induce Bell to more carefully control its manufacturing processes. Moreover, because Bell’s principal place of business is in Texas, there is little doubt that Texas has a significant interest in seeing that Bell manufactures the safest product possible, even when the injuries sought to be prevented occur outside the State.[98] “The economic results of a safe product and a good reputation are directly and indirectly beneficial to the state.”[99]
The Majority also concludes that the policies of Mexico may be undermined if Texas law is applied, and that to apply Texas law would ignore Mexico’s choice to regulate its airspace under a national regime. I disagree. This is a products liability case in which the focus of the claim is on the product as opposed to the helicopter crash itself. Mexico has limited interest in applying its law to regulate the conduct of a Texas manufacturer. Mexico’s sole interest in this case is seeing its citizens fully and fairly compensated for their losses, an interest that is furthered through the application of Texas law.[100]
The fourth § 6 factor is “the protection of justified expectations.”[101] This factor is especially important when a party has molded its conduct to conform to the re *1065 quirements of a particular state.[102] In this case, it seems speculative to think that the Appellee had any expectations concerning litigation in the event of a crash. Moreover, Bell, a company with its principal place of business in Texas, should expect that Texas law will apply to claims arising out of the manufacture of faulty helicopter equipment in Texas. Thus, the Appellant cannot be surprised by the application of Texas law.
The fifth § 6 factor is “the basic policies underlying the particular field of law.”[103] “This factor is of particular importance in situations where the policies of the interested states are largely the same, but where there are nevertheless minor differences between their relevant local law rules.”[104] This factor does not appear to have any significance in this case.
The sixth § 6 factor is “certainty, predictability and uniformity of result.”[105] The comment to this factor recognizes the importance of these values but also cautions that “it is often more important that good rules be developed than that predictability and uniformity of result should be assured.”[106] The comment also observes that “[predictability and uniformity of re-suit are of particular importance in areas where the parties are likely to give advance thought to the legal consequences of their transaction.”[107] In this case, application of Texas law would be consistent with several Texas cases that involved a defendant with a manufacturing plant in Texas and an aviation crash occurring in a foreign country.[108]
The final § 6 factor is “ease in the determination and application of the law to be applied.”[109] Although this factor would seem to favor Texas, it is not significant here.
I agree with the Superior Court that an evaluation of the foregoing factors according to their relative importance leads to the conclusion that Texas has a more significant relationship to the occurrence and the parties than Mexico. Accordingly, I believe that Texas law should apply.
In reaching this conclusion, I recognize that there are cases that have resolved a choice of Texas or Mexican law in favor of Mexico. For example, in Figueroa v. Williams, a truck driver was paid to transport seventy-four illegal aliens — all citizens of Mexico or Honduras — to Houston, Texas in a trailer.[110] Instead, the driver aban *1066 doned the trailer at a gas station in Victoria, Texas.[111] As a result, nineteen of the aliens being transported died in the back of the trailer.[112] Family members of the decedents, also citizens of Mexico and Honduras, brought suit for wrongful death in Texas against the Delaware Limited Partnership that manufactured the trailer and the New York Corporation that owned the trailer.[113] In determining whether to apply the law of Mexico, Honduras, or Texas to the issue of damages, the Texas district court weighed the § 6 factors and concluded that Texas had no interest in the application of its damages law.[114]
Similarly, in Hoffman-Dolunt v. Holiday Inn, Inc., the plaintiff sued defendants, Holiday Inns, Inc., and Posadas de Mexico, S.A. de C.V. for the wrongful death of her husband, who died at a hotel in Ixtapa, Mexico.[115] The decedent was a resident of Mexico at the time of his death, and all of the alleged wrongful conduct that caused his death took place in Mexico.[116] Defendant Holiday Inns was a Tennessee corporation that owned and operated hotels in the United States and in other countries.[117] Defendant Posadas was a Mexican corporation, with its principal place of business in Mexico.[118] After considering all of this information, the Texas Court of Appeals determined that Mexico had the most significant relationship to the claim, and thus governed.[119]
Finally, in Vizcarra v. Roldan, the plaintiff, a Mexican citizen, filed a personal injury suit against the defendant, a Texas citizen, and the defendant’s employer, a Texas corporation, after he was struck by the defendant’s vehicle in Mexico.[120] His wife and mother, also citizens of Mexico, filed bystander and loss of consortium claims in the same lawsuit.[121] The trial court applied Texas law and awarded damages to the plaintiffs in varying amounts.[122] On appeal, the Texas Court of Appeals found that the trial court erred by applying Texas law over Mexican law, and reversed.[123]
In determining that Mexican law applied to the plaintiffs’ claims, the appellate court noted in Vizcarra that the plaintiffs were citizens of Mexico, the defendants were citizens of Texas, and that the relationship between the parties consisted solely of the accident, which took place in Mexico.[124] The court then addressed the Section 6 factors and found that “while ... Texas has a strong policy interest in controlling corporate action in areas such as the manufacture of defective products,”[125] that interest was not implicated for two reasons. First, because the accident was caused by the negligence of an employee, there was no corporate act on the part of the Texas *1067 company that caused the accident.[126] Second, the court found that Mexico had no reason to defer to Texas to regulate negligent conduct inside of its borders.[127]
Notably, the appellate court agreed with the plaintiffs’ assertion that when defendants consist of a Texas citizen and a Texas corporation, Mexico’s public policy interest of protecting Mexican businesses and citizens from excessive liability claims is not offended by application of Texas law.[128] The court, however, went on to find that because the Texas corporation in the case before it maintained a warehouse and did business in Mexico, Mexico’s public policy was applicable.[129]
Each of these eases is distinguishable from the case at bar. In Figueroa, the only connection that the claim had to Texas was that the defendant abandoned the trailer in Texas, making it the place of the injury. Here, the Appellant has its principal place of business in Texas and the defective component that caused the helicopter crash was manufactured in Texas. In Hoffman-Dolunt, all of the conduct that caused the injury took place in Mexico, and one of the defendants was a Mexican corporation. Here, the negligent manufacturing that led to the injury took place in Texas and the Appellant is a Delaware corporation with its principal place of business in Texas. Finally, unlike in Vizcarra, it was Bell’s manufacture of a defective product that caused the injuries in the instant case, not the negligent conduct of one of its employees. Moreover, because the conduct of the pilots is not at issue in this case, Mexico’s interest in controlling negligent conduct within its borders is not implicated. The flexibility of the “most significant relationship test” requires that each case be decided on its own facts.[130]
Lastly, I recognize the Majority’s concern that three of the victims’ representatives are concubinas, and thus may not be permitted to recover survivor benefits or bring a wrongful death action in Texas. This issue, which is disputed by the parties, is of little significance to our choice of law analysis. The Appellees expressly moved for the application of Texas law to the issues of liability and damages. It follows that they believe they can make a full and fair recovery under Texas law, and have accepted any risk that their claims may be barred. The one certainty, however, is that the Appellees’ recovery will be limited if Mexican law applies to their claims.
For all of the foregoing reasons, I would affirm the interlocutory order of the Superior Court.

. See Tumlinson v. Advanced Micro Devices, Inc., 106 A.3d 983, 987 (Del.2013).

. Id. at 987 (citing Restatement (Second) of Conflict of Laws § 6 (1971)).

. Travelers Indem. Co. v. Lake, 594 A.2d 38, 47 (Del.1991) (quoting Restatement (Second) of Conflict of Laws § 145 (1971)).

. Restatement (Second) of Conflict of Laws § 145(2), cmt. e (1971).

. As noted in the Majority opinion, the § 6 principles are:
(a) the needs of the interstate and international systems,
(b) the relevant policies of the forum,
(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
(d) the protection of justified expectations,
(e) the basic policies underlying the particular field of law,
(f) certainty, predictability and uniformity of result, and
(g)ease in the determination and application of the law to be applied.
Id. § 6(2).

. Id. § 6, cmt. c.

. Id. § 6(2)(a).

. Restatement (Second) of Conflict of Laws § 145(2), cmt. d (1971).

. Id. § 6(2)(b).

. Id. § 6, cmt. e.

. Id. § 6(2)(c).

. Oral Argument at 46:33, Bell Helicopter Textron, Inc. v. Arteaga, No. 333, 2014 (Feb. 18, 2015) ("[Appellees' counsel] called [Mexico’s statutory] damages a cap, and it is not a cap. It’s a liquidated damages formula.”), available at http://courts.delaware.gov/ supreme/oralarguments/.

. Arte[a]ga v. Bell Helicopter Textron, Inc., 2014 WL 2600092, at *6 (Del.Super. June 10, 2014) [hereinafter "Opinion"].

. See, e.g., Appellant's Op. Br. App. at All7 (Lie. Adalberto Chavez Bustos Affidavit at 9) ("The purpose of the limits established under federal law ... and the Federal District on negligent homicide damages, is to protect defendants in their respective [Mexican] States for liability for judgments which award large and uncertain sums of money-”).

. See, e.g., Ford Motor Co. v. Aguiniga, 9 S.W.3d 252, 260 (Tex.App.1999) (concluding that because the defendants were not citizens, residents, or businesses of Mexico, the statutory cap was inapplicable); Vizcarra v. Roldan, 925 S.W.2d 89, 92 (Tex.App.1996) (agreeing that because the defendants consisted of a Texas citizen and a Texas corporation, Mexico’s public policy interest in capping damages to protect its businesses and citizens from excessive liability would not be offended by the application of Texas law); Villaman v. Schee, 1994 WL 6661, at *4 (9th Cir. Jan. 10, 1994) (“Mexico’s limitation of tort damages ... is designed to protect its residents from excessive financial burdens or exaggerated claims.") (internal quotation marks omitted); Hurtado v. Superior Court, 11 Cal.3d 574, 114 Cal.Rptr. 106, 522 P.2d 666, 670 (1974) ("The interest of [Mexico] in a tort rule limiting damages for wrongful death is to protect defendants from excessive financial burdens or exaggerated claims.”).

. Ford Motor Co., 9 S.W.3d at 256.

. Id.

. Id. at 260; see also Baird v. Bell Helicopter Textron, 491 F.Supp. 1129, 1140-41 (N.D.Tex.1980) (stating that British Columbia’s interest in protecting its citizens from excess liability, is not implicated if defendant is a Texan).

. Other authorities have reached the same conclusion. See Hurtado, 114 Cal.Rptr. 106, 522 P.2d at 670 ("Since it is the plaintiffs and not the defendants who are the Mexican residents in this case, Mexico has no interest in applying its limitation of damages — Mexico has no defendant residents to protect and has no interest in denying full recovery to its residents injured by non Mexican defendants.”); Ford Motor Co. v. Aguiniga, 9 S.W.3d at 259-61 (finding that Mexico has no interest in applying its statutory cap on damages to limit plaintiffs’ recovery because none of the defendants were Mexican residents); Enterprise Prods. Partners, L.P. v. Mitchell, 340 S.W.3d 476, 482-83 (Tex.App.2011) (finding that Mississippi has no interest in applying its statutory cap on tort damages when the plaintiffs all reside in Mississippi and both defendants were Texas corporations with their principal place of business in Texas); see also Bryant v. Silverman, 146 Ariz. 41, 703 P.2d 1190, 1194-95 (1985) (Arizona law applied to Arizona resident’s tort action arising out of an airplane crash in Colorado partly because Colorado law did not allow for the full range of tort damages); Baroldy v. Ortho Pharm. Corp., 157 Ariz. 574, 760 P.2d 574, 580 (Ariz.App.1988) (Arizona law applied to Arizona resident’s products liability action partly because state in which the injury occurred did not recognize the cause of action).

. Opinion at *5. Other courts have recognized Texas' interest in regulating its corporations' conduct as a significant interest for the purposes of choice of law. See McLennan v. Am. Eurocopter Corp., 245 F.3d 403, 426 (5th Cir.2001) ("Texas has a strong interest in enforcing its products liability laws against the manufacturers operating in the State.”); Ford Motor Co., 9 S.W.3d at 260 (stating that Texas has a strong policy in controlling corporate action in the manufacture of defective products); Baird, 491 F.Supp. at 1141 ("A related interest [of Texas] ... is the evident desire to force those Texas companies that fail to put adequate care into the development and marketing of products to accept the responsibility for that lack of concern.”).

. Opinion at *5 (quoting Mitchell v. Lone Star Ammunition, Inc., 913 F.2d 242, 250 (5th Cir.1990)).

. Id. (quoting Lone Star Ammunition, Inc., 913 F.2d at 250).

. Tokio Marine & Fire Ins. Co., Ltd. v. Bell Helicopter of Textron, Inc., 1982 WL 623495, at *1, *10 (S.D.Tex. July 8, 1982).

. Id. at *1.

. Id. at *10.

. Id. at *12 (internal citation omitted).

. Tokio, 1982 WL 623495, at *12.

. See Lone Star Ammunition, Inc., 913 F.2d at 250 (applying Texas law to a products liability action brought by non-residents against a Texas business for injuries occurring in North Carolina); Baird, 491 F.Supp. at 1140 (applying Texas law to a wrongful death action brought by a Canadian plaintiff against a Texas aircraft manufacturer).

. Baird, 491 F.Supp. at 1141.

. See Tokio, 1982 WL 623495, at *12 (concluding that Japan’s interest in seeing its citizens compensated is furthered by the application of Texas law); see also Gutierrez v. Collins, 583 S.W.2d 312, 321 (Tex.1979) ("[Mexico’s cap on damages has] the effect of substantially reducing a plaintiff’s recovery compared to that which he might expect to receive in a United States court.”).

. Restatement (Second) of Conflict of Laws § 6(2)(d) (1971).

. Id. § 6 cmt. g.

. Id. § 6(2)(e).

. Id. § 6 cmt. h.

. Restatement (Second) of Conflict of Laws § 6(2)(f).

. Id. § 6 cmt. i.

. Id. § 6(2)(e).

. See McLennan, 245 F.3d at 426 (applying Texas law to a Canadian plaintiff’s claim stemming from a helicopter crash that took place in Canada, which was filed against a defendant that did business in Texas); Guizhi v. Bell Helicopter Textron, Inc., 1997 WL 786494, at *2 n.2 (N.D.Tex. Dec. 16, 1997) (concluding that Texas law applies despite the plaintiffs’ injury occurring in China because two of the defendants had their principal place of business in Texas, and the faulty helicopter that caused the injury was manufactured in Texas); Tokio Marine & Fire Ins. Co., Ltd., 1982 WL 623495, at *12 (applying Texas law to a claim brought by Japanese plaintiffs stemming from a Bell-manufactured helicopter crash taking place in Japan); Melton v. Borg-Warner Corp., 467 F.Supp. 983, 986-87 (W.D.Tex.1979) (determining that Texas law applied to a claim resulting from a helicopter crash taking place in Germany).

. Restatement (Second) of Conflict of Laws § 6(2)(f) (1971).

. Figueroa v. Williams, 2010 WL 5387599, at *1 (S.D.Tex. Dec. 17, 2010).

. Id.

. Id.

. Id.

. Figueroa, 2010 WL 5387599, at *5-11.

. Hoffman-Dolunt v. Holiday Inn, Inc., 1997 WL 33760924, at *1 (Tex.App. Feb. 27, 1997).

. Id. at *5.

. Id. at *2, *5.

. Id. at *5.

. Hoffman-Dolunt, 1997 WL 33760924, at *8.

. Vizcarra, 925 S.W.2d at 89-90.

. Id. at 90.

. Id.

. Id.

. Vizcarra, 925 S.W.2d at 91.

. Id.

. Id.

. Id. at 91-92.

. Vizcarra, 925 S.W.2d at 92.

. Id.

. Travelers Indent. Co., 594 A.2d at 48.